**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 5, 2026**

# In the Court of Appeals of Georgia

A25A1975. THE STATE v. SMITH.

DOYLE, Presiding Judge.

The State filed an accusation against Kaiman Lamar Smith, alleging one count of driving a vehicle while under the influence of drugs and one count of driving without headlights. The trial court granted Smith's motion to suppress, and the State appeals, arguing that the trial court erred because the officer had a reasonable articulable suspicion for stopping Smith or, alternatively, had a good faith belief that he observed a violation. For the reasons that follow, we affirm.

When "reviewing a ruling on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions de novo. In doing so, we construe the evidence most favorably to the upholding of the trial court's findings and

judgment." *State v. Mikel*, 321 Ga. 751, 757(2)(b) (917 SE2d 175) (2025) (citation and quotation marks omitted).

So viewed, the record shows that on February 3, 2024, Deputy Kevin Ferguson observed a car traveling on a Houston County parkway with "the passenger side headlight burnt out." After effectuating a traffic stop of the car, the deputy approached the driver, later identified as Smith, and told Smith the reason for the stop was "due to a missing headlight." The deputy told Smith that he smelled the odor of burnt marijuana and asked when he had last smoked. Upon searching the vehicle, the deputy discovered a small amount of marijuana in a cigar pack on the passenger side floorboard.

Officer Christopher Fussell joined the stop and conducted a field sobriety test of Smith, and Smith was arrested for driving under the influence of marijuana ("DUI"). Deputy Ferguson issued uniform traffic citations ("UTC") to Smith for DUI and for violating OCGA § 40-8-20, driving without headlights, noting "front passenger side inop [sic]." The State later filed an accusation against Smith in which it charged that Smith, inter alia, was driving "without displaying … headlights." The State cited no statute in this charge.

Smith moved to suppress evidence from the incident, arguing that the deputy lacked a reasonable articulable suspicion for stopping him because his headlights were illuminated as shown by the deputy's dashcam video.

At the hearing on the motion to suppress, Deputy Ferguson testified that while patrolling after dark on the night in question, he noticed Smith's vehicle because "[t]he passenger headlight didn't appear to be illuminated as ... it was supposed to be." Based on this, Deputy Ferguson, who was traveling toward Smith, turned around and effectuated the stop. Deputy Ferguson testified that he had observed his dashcam video from that night, and the video fairly and accurately represented the conditions at the time. While the video was paused, the deputy identified Smith's vehicle, and he explained that the driver's side headlight was much brighter than the passenger's side headlight. The Deputy stated that in addition to the statute that requires headlights at night, another statute requires all vehicle equipment to be "working properly." After stopping the vehicle, Ferguson did not investigate the passenger headlight any further. Figure 1 and Figure 2, infra, are screen captures from the video and show Smith's vehicle circled in yellow.



**Figure 1**



**Figure 2**

On cross-examination, Deputy Ferguson acknowledged that he did not cite Smith for an improperly working headlight, and the UTC and incident report instead referenced a "burnt out" or "missing" headlight. The Deputy also acknowledged that all four headlights were illuminated in the video.

The State also called Officer Fussell, who had joined Ferguson to perform field sobriety tests of Smith. He testified that he had seen Smith's vehicle earlier in the evening, noted to himself the "dim" passenger headlight, but declined to stop Smith because he had pulled over another vehicle. On cross-examination, the officer disputed that all four lights were illuminated as shown in the video, and he contended that the video did not depict the actual brightness level:

> [y]ou can see four points of light coming from the front of that vehicle, but I can't determine if that's a headlight on the passenger side. Which the night of the stop I know was not working. Compared to the driver's side that is a larger, brighter area of the front of that vehicle. So, the body — or the in-car camera does not depict what we as officers see with our natural eye.

Officer Fussell testified that on his body-cam video, he made a statement about the headlights at that time; however, the court's order found that his body camera footage "was not tendered into evidence."

The trial court granted the motion to suppress, issuing an order, which it later amended. In its order, the court first noted that the incident report stated that Ferguson stopped Smith for a "burnt out headlight" and "missing headlight." The court then explained that although Ferguson testified that he initiated the stop because

of "a missing/improper headlight," the court's review of the video showed that Smith's headlights were "functioning and were on." The court found that the deputy admitted that the headlights were on, which contradicted his basis for the stop as stated in the UTC and incident report. The court also found that Officer Fussell testified that the headlights were not working "despite what the video may show."

The court found that

> [t]he evidence was clear and even admitted by the deputy that the headlights were on[; t]he charges do not match the incident report, or the narrative given by Deputy Ferguson[; a] charge or mention of failure to maintain equipment could have changed the outcome of this [m]otion[; and i]f the Defendant's lights were on, which the evidence supports, then there was no [r]easonable [a]rticulable [s]uspicion for the stop.

The court went on to determine that, aside from the clear evidence that Smith did not violate the headlight statute, under the totality of the circumstances Deputy Ferguson was not acting in good faith when he stopped Smith. This appeal followed.

1. As an initial matter, despite the State appealing this case, it failed to ensure that Deputy Ferguson's dashcam video and his incident report were transmitted to this Court for review. We remind the State that when it is the appellant, it is

responsible for ensuring that the record is complete and risks having this Court decline to review any enumerations of error that require the missing portion of the record. See Court of Appeals Rule 18(b) ("The appellant's failure to complete the record may also result in this Court declining to consider enumerations of error related to the missing evidence."). More troubling, however, is the fact that despite tendering into evidence only Deputy Ferguson's dashcam video, when this Court requested from the trial court a copy of that recording, this Court instead received a disc containing the dashcam video and also two other videos from Deputy Ferguson, two videos related to Officer Fussell, and four other videos labeled "Bryan Frizzell" and "Thomas Archie." This Court will review none of the superfluous videos that were not tendered into evidence before the trial court. See *Sherod v. State*, 334 Ga. App. 314, 315 n.9 (779 SE2d 94) (2015) ("'Appellate courts will review only evidence presented to the trial court before its ruling on the motion. Additional evidence will not be admitted on appeal.'" (quoting *Paul v. Joseph*, 212 Ga. App. 122, 125(2) (441 SE2d 762) (1994)).

2. In related enumerations of error, the State argues that the trial court erred by granting the motion to suppress because Officer Ferguson had a reasonable articulable

suspicion that Smith had violated the law by having a defective headlight, or alternatively, Ferguson had a good faith belief that Smith was violating the law. We disagree.

The burden is on the State to prove the lawfulness of the stop. See OCGA § 17-5-30(b); *State v. Parke*, 304 Ga. App. 124, 126 (695 SE2d 413) (2010). "To initiate a traffic stop, an officer must have specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. It is well established that a stop is authorized if the officer observes a traffic violation." *Chapman v. State*, 368 Ga. App. 682, 684(1) (890 SE2d 313) (2023) (footnote and quotation marks omitted). This Court explained that if

> an officer reasonably but mistakenly believes that certain conduct violates the law, the observation of that conduct can serve as reasonable suspicion if the officer's mistake of law was objectively reasonable. To determine whether an officer's mistake of law was reasonable, courts must engage in a straightforward question of statutory construction. If the law in question is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake.

Id. at 685(1) (citations omitted, citation modified).

8

In this case, there is no question that the headlights were operational and illuminated. OCGA § 40-8-20 states that "[e]very vehicle upon a highway ... shall display lights, including headlights[.]" Given that Deputy Ferguson noted that the passenger light was "inop" or "burnt out" when that is not the case, the trial court correctly concluded that Ferguson did not make a "reasonable mistake" about whether Smith's headlights violated OCGA § 40-8-20. See *Abercrombie v. State*, 343 Ga. App. 774, 785(2)(a) (808 SE2d 245) (2017) ("[T]he officer's mistake of law was not objectively reasonable and thus could not provide the reasonable, articulable suspicion necessary to justify a traffic stop."). Compare *Chapman*, 368 Ga. App. at 686(1).

The State has latched on to the language in the trial court's order in which it stated that the inclusion of a different alleged violation may have changed the outcome of the motion. The State argues that the officer did not have to charge any violation at all in order for the court to find that he had a reasonable articulable suspicion. See, e.g., *Buffington v. State*, 228 Ga. App. 810, 813 (492 SE2d 762) (1997) (explaining that "[t]he fact that the officer did not charge defendant with the observed traffic offense but only with the more serious offenses revealed after the traffic stop is immaterial.").

That is the point of the trial court's finding though — if the deputy had cited a different statute and made notations about the headlight being improperly maintained, the court may have determined that he had a reasonable articulable suspicion to stop the vehicle. Moreover, we do not read the trial court's order as argued by the State. Instead, the court's collective findings show that it did not believe that Deputy Ferguson had a reasonable suspicion warranting a stop of Smith under the totality of the circumstances. *Abercrombie*, 343 Ga. App. at 784–85(2)(a). The court's determination is supported by the record, see *Mikel*, 321 Ga. at 757(2)(b), and the State's arguments are without merit.

*Judgment affirmed. Markle and Padgett, JJ., concur.*